**IN THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| THE TRAVELERS INDEMNITY COMPANY | ) ) | |
| | ) | CIVIL ACTION |
| Plaintiff, | ) | FILE NO: _____ |
| v. | ) ) | |
| COVENTRY HEALTH CARE WORKERS' COMPENSATION, INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Plaintiff The Travelers Indemnity Company ("Travelers") and by and through its undersigned counsel, files this Complaint.

## PARTIES, JURISDICTION, AND VENUE

1.

Travelers is incorporated under the laws of Connecticut with its principal place of business in Connecticut.

2.

Coventry Health Care Workers Compensation, Inc. ("Coventry") is incorporated under the laws of the State of Delaware with its principal place of business in Bethesda, Maryland. Coventry may be served through its registered agent, C T Corporation Systems at 289 S. Culver St., Lawrenceville, Georgia, 30046.

1

3.

There is complete diversity of citizenship between Travelers, which is a citizen of Connecticut and Coventry, which is a citizen of Delaware and Maryland for purpose of federal court jurisdiction.

4.

The amount in controversy exceeds $75,000.

5.

This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

6.

Coventry has a registered office in Fulton County located at 1201 Peachtree Street N.E., Suite 1240, Atlanta, Georgia, 20261.

7.

Coventry is subject to the personal jurisdiction of this Court for the claims asserted herein.

8.

Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because Coventry resides in the Northern District of Georgia for the purposes of venue and because a

2

substantial part of the events or omissions giving rise to this claim occurred in the Northern District of Georgia.

## **FACTS**

### The Managed Care Service Agreement

9.

Travelers hereby incorporates the allegations contained in paragraphs 1 through 8 as if set forth in their entirety.

10.

On March 28, 1996, HealthCare COMPARE Corporation (predecessor in interest of Coventry) ("HCCC"), Travelers, and The Aetna Casualty and Surety Company entered into a Managed Care Services Agreement ("MCSA").

11.

As part of its obligations under the MCSA, HCCC agreed to price bills from hospitals and outpatient care contract providers to contract rates in accordance with HCCC's standard procedures and upon completion of pricing, inform Travelers of the reimbursement amounts.

12.

HCCC agreed to use its best efforts to research and resolve billing disputes with contract providers to the reasonable satisfaction of Travelers.

13.

HCCC also agreed to perform all activities necessary to establish and maintain certain health care provider networks, including provider contracting, credentialing and quality assessment.

14.

HCCC further agreed to support contract providers as needed to maintain a quality network and promote the early return to work of injured workers.

15.

HCCC also agreed to provide Travelers with periodic reports of ongoing results of services provided under the MCSA, to include the data necessary to adjudicate medical bills.

16.

The MCSA provided that HCCC agreed to indemnify Travelers against any and all damages arising from HCCC's negligent performance of its duties under the MCSA.

17.

A First Amendment to the MCSA was entered into on August 31, 2001 between First Health Group Corp. (f/k/a HCCC.), The Travelers Indemnity

Company and Travelers Casualty and Surety Company (f/k/a The Aetna Casualty and Surety Company).

18.

A Amendment to the MCSA adjusted the duration of the agreement.

19.

A Second Amendment to the MCSA was entered into on April 1, 2004 between First Health Group Corp. (f/k/a HCCC) and The Travelers Indemnity Company (on behalf of itself and its insurance affiliates and non-insurance affiliates that administer workers compensation claims).

20.

The Second Amendment related to third-party provider networks and confidentiality and did not include any changes to the indemnification provision of the original MCSA.

21.

On January 1, 2006, Third, Fourth, and Fifth Amendments to the MCSA were entered between First Health Group Corp. (f/k/a HCCC) and Travelers Indemnity Company. The Amendments did not include any changes to the indemnification provision of the original MCSA and did not affect the foregoing contractual obligations Coventry owed to Travelers in the state of Georgia.

5

22.

On December 20, 2007, The Travelers Indemnity Company, Inc. and Coventry Health Care, Inc. entered a Statement of Understanding ("SOU") which incorporated the terms of the MCSA and its amendments and further set forth the understanding of the parties.

23.

The SOU provided that it operated in conjunction with and did not supersede any terms in the network agreements between Travelers and FOCUS Healthcare Management, Inc. and between Travelers and First Health Group Corp. unless specifically identified in the SOU.

24.

Coventry is a successor in interest to First Health Group Corp. (f/k/a HCCC).

25.

The SOU did not materially affect the obligations of the parties and did not alter Coventry's indemnification obligations.

26.

None of the amendments materially altered Coventry's duties owed to Travelers under the MCSA and SOU.

6

27.

None of the amendments altered Coventry's indemnification duties to Travelers under the MCSA and SOU.

28.

The Eighth Amendment provided that the proper parties to the SOU are Travelers and Coventry. There were no references or changes to the indemnification provisions of the SOU and MCSA in the Eighth Amendment.

The Underpayment Lawsuit

29.

On April 5, 2011, seven hospitals in Georgia ("Plaintiff Hospitals") filed a lawsuit Georgia against Travelers and others, alleging underpayment of bills the hospitals submitted for reimbursement. The lawsuit was styled Coliseum Medical Center, LLC et al. v. Aetna Workers' Comp Access, LLC, et al., Civil Action No. 2011CV198928, Superior Court, Fulton County (the "Underpayment Lawsuit").

30.

The Plaintiff Hospitals in the Underpayment Lawsuit alleged that certain bills for high-cost drugs and surgical implants were reimbursed by Travelers and the other defendants at incorrect rates, as repriced by Coventry and others.

31.

The incorrect prices were a result, at least in part, of Coventry entering into conflicting contracts with the subject hospitals and other entities, including Aetna Workers Compensation Access.

32.

The underpaid bills were repriced incorrectly by Coventry during the term of the MCSA and SOU, despite notice to Coventry of the fact that the amounts were lower than required.

33.

Travelers forwarded a copy of the complaint in the Underpayment Lawsuit to Coventry.

34.

Travelers invited and requested Coventry to participate in the Underpayment Lawsuit.

35.

The Underpayment Lawsuit was subsequently resolved after significant cost to Travelers.

## COUNT ONE: BREACH OF CONTRACT

### 36.

Travelers reincorporates the allegations contained in paragraphs 1 through 35 herein as if set forth in their entirety.

### 37.

The MCSA and subsequent amendments along with the SOU and its amendments was a valid contract between Travelers and Coventry.

### 38.

Coventry breached the terms of the MCSA and SOU when it failed to properly reprice bills provided by health care providers, causing Travelers to issue payments in the incorrect amount.

### 39.

Coventry breached the terms of the MCSA and SOU when it failed to ensure that contract providers had the appropriate credentialing and failed to evaluate the quality of the contract providers, and assist them in maintaining a quality network.

### 40.

Coventry breached the terms of the MCSA and SOU when it failed to provide Travelers with periodic reports of ongoing results of services provided under the MCSA, including data necessary to adjudicate medical bills.

41.

Coventry breached the terms of the MCSA and SOU when it failed to manage the provider relations and failed to use its best efforts to research and resolve billing disputes with contract providers to the reasonable satisfaction of Travelers by refusing to research and remedy billing discrepancies of which it was made aware.

42.

Coventry breached the terms of the MCSA and SOU when it failed to ensure the providers were properly credentialed, including its failure to ensure that providers were certified Worker's Compensation Managed Care Organizations in accordance with Georgia law.

43.

Each breach occurred during the term of the agreements between the parties.

COUNT TWO: INDEMNIFICATION

44.

Travelers reincorporates the allegations contained in paragraphs 1 through 43 herein as if set forth in their entirety.

10

45.

Under the terms of the MCSA, Coventry owed and continues to owe Travelers a duty to indemnify Travelers against any and all damages arising from Coventry's negligent performance of its duties under the MCSA and SOU.

46.

Despite notice of the alleged underpayments, Coventry did not seek to address or correct the process for repricing and continued to incorrectly reprice bills for payment by Travelers.

47.

Coventry also failed to fully and or properly notify Travelers of the billing issues once Coventry had notice of the errors.

48.

Coventry negligently failed to ensure that its providers were credentialed in accordance with the Workers' Compensation laws of Georgia.

49.

Coventry was negligent in entering into conflicting contracts for repricing of bills which lead to the dispute giving rise to the Underpayment Lawsuit.

11

50.

As a result of Coventry's negligent performance of its duties under the MCSA and SOU, Travelers incurred damages, including attorney's fees, expert fees, and related costs.

51.

Travelers is entitled to indemnification by Coventry for the damages and fees it has incurred as a result of Coventry's negligence.

52.

Coventry has not indemnified Travelers for damages it incurred as a result of Coventry's negligent performance of its duties under the MCSA and SOU.

**PRAYER FOR RELIEF**:

WHEREFORE, Travelers prays for the following relief:

(a)     That a summons issue and service be made on Defendant Coventry

(b)     That judgment be entered against Defendant Coventry

(c)     That Travelers recover its actual damages of $290,315.56

(d)     That attorney's fees and costs of this action be taxed against Defendant Coventry

(e)     a trial by jury on all issues so triable; and

(f)     such other and further relief that justice requires.

Respectfully submitted this 25th day of January, 2018.

FREEMAN MATHIS & GARY, LLP

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com
Joyce Mocek
Georgia Bar No. 515005
jmocek@fmglaw.com
Eric P. Benedict
Georgia Bar No. 890708
ebenedict@fmglaw.com
*Attorneys for Plaintiff*

100 Galleria Parkway
Suite 1600
Atlanta, GA 30339-5948
(770) 818-0000 (telephone)
(770) 937-9960 (facsimile)

13

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing document has been prepared in compliance with Local Rule 5.1(B) in 14-point New Times Roman typeface.

This 25TH day of January, 2018.

FREEMAN MATHIS & GARY, LLP

*/s/ Philip W. Savrin*
Philip W. Savrin
Georgia Bar No. 627836
psavrin@fmglaw.com
Joyce Mocek
Georgia Bar No. 515005
jmocek@fmglaw.com
Eric P. Benedict
Georgia Bar No. 890708
ebenedict@fmglaw.com